Thank you, Honorable Judges. There's a lot of minutia in the briefs on this case, so I'd like to spend a couple of minutes focusing on the big picture. The law known as IDEA is the most important of all federal civil rights legislation that Congress has enacted for the disabled because it enables them to get an education. And in our society, education is everything. And much in the way that 1960s legislation aided African Americans who were unable to gain admission to the University of Alabama or others who were unable to gain admission to Saddleback, a decade later IDEA responded to the needs of millions of disabled children who had no meaningful access to a public grade school education in this country. With IDEA, Congress granted disabled children a federal right to an individualized, appropriate education program at state expense. The federal right thus has two components, an individualized determination of the program that's appropriate and implementation of that program by the state. Rather than have the federal government determine the educational programs, Congress left that to the people who traditionally make decisions about children's education, their parents and state educators. And for that reason, IDEA sets up numerous procedural mechanisms that these parties follow and they all emphasize reaching cooperative agreement between the parents and state educators. It starts with an IEP team meeting, which is where parents and educators come together. They follow a mandatory agenda that's designed to bring them to consensus on what the child's program should be or state schools can make a unilateral proposal that parents can agree to through acquiescence. And all three states have to make professional mediators available, again, with the emphasis on bringing the parties together in agreement. Counsel, can I? I'm sorry to interrupt. No problem. I think the big picture is important and the policy objectives of IDEA are extremely important. Precisely for that reason, Congress has done quite a bit of what I'll call infrastructure in legislating how IDEA is to be implemented. There are federal regulations, and there's a conspicuous gap in those regulations. If there's a settlement that's arrived at as a result of a formal mediation session, then there is provision for that being enforced by a court order.  Neither the statute nor the regulations say anything about it. This is a fundamental question of what the role of the court is, it seems to me. We can talk about how important the statute is and how valuable the policy objectives are, but Congress has involved itself in this exact area as to when settlements are enforceable and has not provided for this type of settlement being enforceable. Why is it the job of the court to fill that gap rather than Congress? It may have been an omission, it may have been an oversight, or it may have been intentional, but it's sort of a fundamental separation of powers question, it seems to me. I would point to the fact that the clause that's at issue here, 1459-3D, is not expressed in IDEA as a dispute resolution mechanism. It's expressed as a limitation on attorney fee shifting. Of course, attorney fee shifting Congress added to IDEA because the burden of enforcing IDEA isn't through a federal bureaucracy, it's placed back on the parents of disabled children who are already financially burdened by raising their child and need attorney fee shifting if they're going to be able to afford attorneys to litigate when they have to, to enforce their children's rights. So 1459-3D, simply it limits parents' rights to recover attorney's fees when they don't accept a settlement agreement that ends up being better than the ultimate administrative decision that they get. And Congress added that specific limitation on the fee shifting because what happened at the time, and the history of it is actually quite pertinent, the fee shifting provision was added to IDEA in the wake of the Supreme Court's ruling in Smith v. Robinson very soon after, with uncharacteristic swiftness, after that decision that ruled that under IDEA that, well, that it, sorry. I was going to respond to that. I think you're saying Congress was trying to address a different problem when it enacted that provision. When it enacted the fee shifting provision? Yes. Well, the reason that 1415-I3D was added was because Congress also, late in the game in the conference committee, took note of the Merrick v. Chesney decision that was a later decision of the Supreme Court that specifically construed Rule 68 and applied the cost shift, saying about the cost shifting provisions in Rule 68 that they would apply to attorney fee shifting as well. That if a plaintiff's cost shifting was limited to Rule 68, so would attorney fee shifting. But that's really not what we're dealing with here. What we're dealing with here is whether a voluntary settlement agreement that is reached outside of the formal process of the administrative proceeding has to be, must be enforced by the administrative law judge. And there's just no legislative authority for that at all that I can find. Well, respectfully, Your Honor, I would, I disagree that. So where's the, so please, I would love to be wrong for the policy reasons that you're indicating, but where is it? Where is the legislative authority that compels the ALJ to enter the terms of the settlement as an order? Well, if I can address first, I disagree that an agreement that's reached through 1415i3d or through an offer of settlement is a private voluntary agreement. It's neither private nor voluntary. But it wasn't, this wasn't done through the auspices of a mediation that was ordered by the ALJ, was it? This was not, this didn't fall into the category that the statute explicitly addresses. It was not through mediation, no. It was outside of that. But nor was it private and nor was it voluntary. It's the timing of the offer is dictated by the statute. The timing for the response is dictated by the statute. The offer and response must be in writing according to the statute. And the terms by which the agreement is reached are of such a coercive nature,  The offer isn't really the same effect. But I understand that. But where is the statutory language in which you can hook this argument that the ALJ must enter the terms of the settlement? You're saying this is mandatory. The regs give the ALJ some discretion. But where is the mandatory language to be found that an agreement reached under these circumstances has to be reduced to an order? Where is that? It's not an idea because Congress only included half of the offer of settlement rule. We have to understand that the other half of the offer of settlement rule is unavoidably implied by the half that is there. The one half doesn't make any sense without the other. The half that we have is what happens when an offeree rejects an offer of settlement rule. Okay. The half that we don't have, the gap in the legislation. I'm sorry. I'm not sorry. I'm not trying to give you a hard time. But, I mean, this is a hard case because what you're saying does make sense. However, Congress doesn't always make sense. No disrespect to Congress. They know how to write a statute. They could have incorporated the entirety of Rule 68, and they didn't. So why is it the function of the court to fix that? Why is it not Congress's obligation to fix that if they want to? Because it's a matter of statutory construction. Again, Congress didn't include the other half. But what Congress was including, and when I alluded before to what happened in conference committee, what they were including was what happened in the Merrick v. Chesney decision. What they were including was to say, yeah, you know, it's fair and it's right that if an offeree gets an offer that's better than what their ultimate result would be, the litigation should stop there. That they don't need attorney fee shifting beyond that point because the litigation isn't necessary beyond that point. But that's only true if, as was ruled in Merrick v. Chesney, because Merrick v. Chesney was looking at Rule 68 where you get an order on the terms of the settlement. That's only true if the offeree can then count on having an enforceable agreement where they're going to get their settlement monies or whatever quickly. And frankly, they know they're going to get it, which is not what my clients, what happened to my clients. If my clients had known that accepting the offer of settlement that the school district offered them in June of 2006 would mean that a year and a half later they still hadn't received the settlement monies, they certainly wouldn't have accepted it. Let me just go ahead. Sorry. Excuse me. But didn't they, didn't your clients who were bred in this dispute come up right away after you had accepted the offer and you sent your acceptance saying that the parents and the student hereby accept the settlement offer made in the above proceedings? Now we're all happy. But then it was shortly after that that you then asked that the settlement be made a judgment. And the school district objected to that. So it was not going to pay you the 42-5 at that point when you still had this dispute. And I think when did it finally pay it? After the district court said that they didn't have to make it a judgment? That was when the check was finally made available. When they finally paid it. Well, that seems to be a rather normal sort of a process for the school district to take. I would submit, Your Honor, that nothing about the dispute over whether or not the agreement should have been entered into an order by the administrative law judge. But see, you wanted to collect attorney fees. That's what this whole thing is about, isn't it? It's about lawyer fees. What you wanted was to have this as a judgment so you could say, well, now there was an alteration of the legal obligations between the parties. We're entitled to cover our attorney fees. But the school district only agreed to pay you $42,500 for your costs, didn't say anything about paying your attorney fees, and didn't say anything about this becoming part of a judgment. The attorney fee issue, Your Honor, we believe is not the issue before this Court but would be more – would be properly heard in the district court. Well, yeah, but you can't get there unless you can get this made into a judgment. Isn't that right? Not only could we not get there, but we couldn't get this order enforced. There's no effective enforcement for the settlement terms, as my clients found, without having an enforceable order in the form of litigation which reasonably one would reasonably expect from an offer of settlement rule. You could sue them, I suppose, if they didn't. In State court there's a litany of reasons why suing them in State court is not an effective enforcement mechanism for my client. We list them in the brief. I'd be happy to discuss them this morning, but they're – You just – once you accept that offer and your acceptance, you could provide that cashier's check is to be delivered within 10 days. Pardon me? I don't think that – could you repeat the question, please? The school district paid an offer of $42,500, right? Yes. Okay. And your client accepted it the next day? Yes. Now, couldn't your client have said that this acceptance is contingent on our receipt of a certified check from the school district within 48 hours? No, Your Honor, because of the nature of an offer of settlement rule. We have no – my client had no negotiation leverage in that process at all. It's a take-it-or-leave-it. It's a take-it-or-leave-it offer. We have 10 days to accept the offer as it was or face the consequences of losing cost shifting, attorney fee shifting. There is no bargaining. That's why it's not a private settlement, because there's no opportunity to negotiate or bargain. Well, I'm sure there is. I'm sure there is. Then perhaps – But I need some attorney's fees added on to it. There were a number of discussions, certainly, between the parties between the school district and us about attorney's fees before the offer was made. But the rule is very clear, unless I'm misunderstanding. The rule is very clear that once an offer of settlement is made, there's no negotiation on that offer. The offer is either accepted within 10 days, and if not, then the consequence is fallen, and any right to cost or attorney fee shifting from that point forward is cut off. Well, that doesn't mean that counsel can't – If the final result is – It doesn't mean counsel can't talk. I mean, the offer is in writing, and it stands as is. But that doesn't mean that if you call opposing counsel and say, can we agree – would you agree to amend to do X, Y, or Z, that doesn't – you don't lose your rights under the rule. You still have the 10 days to accept or reject the offer. At least that's my understanding. I don't know that it's any different in a special education context. You're permitted to talk. You just have to ultimately say yes or no to the offer. You can't condition your response in any way. You can't condition your formal response. But it seems to me there's a lot of ways, and my colleagues have suggested it, around this problem. You can either agree on a time certain for payment. You can agree in your discussions that it will be reduced to an order, but that you won't seek fees. There's a lot of ways to accomplish it. It seems to me what you're arguing is it's a per se rule the other way, that if the offer is accepted, that you automatically are entitled to a judgment. And that's – again, I mean, Congress having spoken as to part of this, it's really how we treat the fact that they haven't spoken to the other part. That's correct. I mean, for a judge, at least for this judge, this is a hard thing to do, where it's not like Congress has ignored the area. They've legislated in this area, and they have not addressed the precise problem that we have here when they easily could have done so. And then the only regulation that you have that speaks to this says may. It doesn't say must. Yeah, I mean, there's lots of things you could have done. And you could have filed a motion to vacate the dismissal and then file another motion asking OAH to incorporate the terms of the settlement agreement into its dismissal order. You could have done that. Your Honor, we requested that OAH enter an order. OAH invited us to brief that issue, and the very next business day dismissed the case. We had no opportunity to make that motion to OAH in the chronology of the case. Well, I mean – And so we did. That's what we brought to district court. They right away asked for reconsideration. The next day pointed out that there were extreme time limits. Something got mixed up if you asked for that, and the next day that request was denied. That seems like it could have happened, and I can't answer for why OAH would have confused that, but that is why we went to federal district court, which is the appropriate forum to ask for that dismissal to be vacated and instead an order issued on the terms of the settlement agreement. I also want to point out that, Your Honors, that my clients had paid for the attorney's services at the administrative level at our regular hourly fee level, and that's our customary approach. We seldom represent clients on a contingency basis, and if we do succeed in recovering attorney fees for the administrative level in this case, that reimbursement will go to the clients who desperately need it and who at the time that they accepted the settlement agreement offer desperately needed the reimbursement funds that were offered to them. They had for several years been paying for the services that the school district had not been paying for their child. They were on the brink of financial ruin, and they had to try to fix their situation as well as continue to provide services for their son to give him a fighting chance at leading a normal life. Well, did they, I don't want to interfere with the attorney-client relationship, but you would have thought that before they accepted the offer they would have consulted with counsel. Certainly they consulted with counsel, but part of what they were facing at the time, we were very close to the administrative hearing. Had we continued to work, we would have continued to generate a lot of expense for them in those last days preparing for hearing, and they had a very short order decision that they had to make. There were further discussions with the school district about attorney's fees. What we proposed having accepted this offer of settlement was that if the school district wanted to include attorney's fees in that agreement, as they later suggested to us, that we would be happy to do that for additional consideration, but the school district was not willing to negotiate on that point. Okay, thanks. You're beyond your time. Thank you very much. Thank you. Good morning, Your Honor. May it please the Court. My name is Dan Harbottle for Respondent Eppley, Saddleback Valley Unified. I think, Your Honors, that we've covered much of what I would want to focus our attention on collectively, but one particular thing I think is important to keep in mind that counsel indicated during her opening, 1415 I3D is, in fact, a resolution mechanism. It's one of the several mechanisms for resolution under the IDEA. It's not simply a fee-shifting provision, and it has that effect under certain conditions, but, of course, not under this particular condition. Do you know anything about the legislative history? Was this an oversight? Was it intentional? You know, if you have an unambiguous statute, we don't have to go there, but was this ñ are you familiar with whether there was any thought given to treating acceptances and rejections differently? No, sir, I don't. Okay, thank you. But I do know that what strikes me after having this case been living with me for the last three years, and Your Honor pointed out the chronology, the day we made our offer was June 106. The day that it was accepted was June 206, as Your Honor pointed out. That very same day, the letter from counsel to presiding judge Engelman at OAH sought judgment, not under Section 3087, but under Rule 68. And it's crystallized in my mind the fact that no one at that time, counsel included, believed that there was any basis for entry of an order or any judgment under 3087. The only possible way, I think, counsel conceived of getting a judgment under these conditions was through Rule 68. But, of course, the offer wasn't made under Rule 68, nor was it accepted under Rule 68. So this last three years of litigation has been really a second major litigation that the whole progeny of cases following Buchanan had said, we don't want to have. We don't need this because the legislation is very clear. If it omits this fee shifting, then it omits the fee shifting. And one of the things it also omits that is inherent in Rule 68 is that if an offer under Rule 68, if an offeree declines an offer, does less favorably, then that offeree also pays the costs of the offeror. That term was left out of 14593d. So under the reading counsel wishes to give it, which has some appeal from a policy point of view, one would have to include all of those provisions that were left out of Rule 68. Well, is there any prohibition that would, well, is there anything in the statute that would preclude the offeree from calling the attorney for the offeror and saying, yeah, I know it's 10 days, but can you give me 20? I need a little more time. No, sir. There's no prohibition against negation. There's no prohibition. Or... You could talk as much as you want, as long as they... And clarify the request. If there's an order, if the offer was unclear, then counsel could have asked for clarification, but it was accepted unconditionally. And that term was used throughout the rest of the litigation by counsel. The offer was accepted unconditionally, and the terms of the offer were set forth very clearly by the district judge in his ruling. The form of the contract is essentially two sentences. We offer you 42,005, et cetera. We accept unconditionally. So... The coercion here to... Not to accept... Is that... You just continue with the proceedings. Correct. You would continue with the proceedings. You would go through the administrative hearing. A ruling would be issued by the Office of the Administrative Hearing. And it's not really a coercive provision, in my opinion, but it is less... 1415 I3D than there would be under Rule 68, as we were just discussing. There is some consequence to it, but that is a resolution mechanism designed by the legislature to stimulate settlement. Just to follow up on Judge Pagerson's question, there's no prohibition in either the statute or the regulatory scheme against saying, as part of the discussion of an offer here, that it be reduced to an order. That's a term that can be discussed. It is a term that can be discussed. But, of course, at the time, the account had been accepted under the Ninth Circuit. So had, of course, the discussion... Rather than sending an independent letter to the judge, as has happened, counsel could have requested a separate order. At any point. And it could have even been without attorney's fees if that was what the sticking point was, which I suspect it was. Correct. In fact, I'm sure we've briefed this carefully, but the request for a 3087 order was actually made by counsel and then withdrawn following the – it was withdrawn later and never actually heard by the Office of Administrative Hearings. Although when it was withdrawn, as Your Honor indicated, could have been done. A sort of a promise was made by the – by counsel that a new motion seeking to vacate the dismissal that had been issued would be filed. And that was never filed as well. So really, OAH had nothing else to do. There was no ruling upon which OAH – there was no motion upon which OAH could have made a ruling. All right. Thank you very much. Thank you very much. Do you want to respond? Can I take three questions? Yeah. Thank you. I just want to point out that we feel very strongly that it makes no sense to construe 1459-3D, which certainly does function as a dispute resolution mechanism, as one that would resolve the dispute over what a student's federal right is, what's the educational program to which he's entitled, and simultaneously destroy that federal right by giving him no way to enforce it federally. If Congress had intended that that provision be the only provision and idea whereby a disabled student's parents, by finally reaching an agreement with the school district as to what his appropriate educational program should be, would then be waiving his federal rights, we feel strongly that Congress would have told us so explicitly. And to say that that's what they would have meant to do by simply leaving out a missing half of the offer of settlement rule that is best understood to be directly implied by the half that is there, the half that's there, doesn't make sense without the half that's not there. We think it's really overstretching and an improper construction. The half that's not there doesn't... Well, you have the provision that if you go to trial and you don't get a judgment that you don't have that here. The half that's in idea tells us that if the offer is not accepted, that the right to recover attorney's fees is cut off as of the day the offer was made, if the final determination of the hearing officer isn't better than the offer itself. The half that's missing is what happens when the offer is accepted. Our clients accepted the offer, as counsel pointed out, unconditionally, the offer for $42,500 to settle educational claims. Our clients accepted that offer and idea doesn't tell us then what happens. There are only three things that could happen. Nothing happens and the parties have to go forward to hearing, which makes no sense because that would mean that an offer plus a timely acceptance doesn't make a settlement. Or, as the district court ruled, it could mean that the student thereby waives, loses all his federal rights that IDA has granted to him. Or, as we propose, it could mean that the litigation concludes at that point the way it was always going to conclude. But with a right to attorney's fees then? Perhaps. Well, it is more than a perhaps. I mean, if you're the prevailing party, why wouldn't this essentially be a fee-shifting provision in disguise? In other words, again, I'm just trying to understand how this is going to work in practice on the ground. If all of these settlements that are done off-site, if you will, have to be incorporated into orders, then the orders give the prevailing party an entitlement to fees. That's a fee-shifting provision. Uh-huh. And Congress didn't do that. Congress did do that. Congress made fee-shifting for IDA litigants one of the most important elements. Under certain circumstances it did. I mean, it defined certain circumstances under which there was fee-shifting. Mediated agreements and so forth. And it didn't include these. And, I mean, I understand what you're saying. I really do, and I want to be very clear that I do, that it's a burden on families. It's a burden on the children. I get that. But the point is that what you're asking for is for these types of agreements to be treated the same way as the ones that the statute specifically shifts fees in. And that's asking us to assume that Congress meant to shift fees in an area where it didn't. And if it's not treated the same, if these orders aren't enforceable, then few families of students with disabilities in the Ninth Circuit are ever going to accept these statutory offers in the future. And that will mean that more of these cases are going to go forward to litigation. And that is a burden and is unfortunate, not just for the families, but also, remember, for the state. See, we don't know that that's true, that what you're saying is true. There will be more cases of litigation because there's nothing that would preclude counsel for the handicapped child to seek to negotiate a fee award. True, but then why have the offer of settlement rule in there at all if it can always be superseded by other negotiations? Why? It's in there because it serves a purpose. It's in there because it limits. Well, it's in there because it gets the ball rolling. That's why it's in there. If it is to function. It's in there because then the party who's seeking reimbursement, who may be thinking about attorney's fees, now has got a figure right on the money is on the table. And they've got to decide what they want to do. If they don't think it's enough money because they've got to pay it, take attorney's fees and pay that out of the settlement, then they can seek to negotiate. They don't have to accept the offer. They may get an increased offer. I don't disagree that there are other dispute resolution mechanisms in IDEA. But if this one is to function, it cannot function as ruled the district court in the L.K. case and say, well, nothing happens if the offer is accepted and you have to go ahead and litigate. It cannot function under the construction that the district court in this case ruled that says that once you accept the offer, this student steps out of IDEA, steps back in time to 1975, and now has no federal right to the educational program that his parents and his school district have finally agreed is the appropriate one for him. It can't be. It can't function. And if it is to function as a dispute resolution mechanism, again, it can't do so because the parents won't accept it. And the states then bear the cost. The parents bear the cost of going forward with litigation. The states bear the cost of the attorneys and the experts for the school district of maintaining the administrative forum itself. Say the parents decided to go forward with the litigation. Are you saying then that the parents would be precluded from seeking attorney's fees? If the final result they get at the administrative level is not as good as the offer that the terms of the offer that was made in the offer of settlement. All right. But then would they have to appeal to the federal district court to seek a better offer? Perhaps. All right. We see this as. We've gone through this. And. You make a good argument. I think the statute is going to be hard to overcome. Thank you. Thank you. All right. The last matter is submitted. And that's Alonzo versus Maximus. And the court will recess. Resume our hearing tomorrow morning at 930. Okay.
judges: Pregerson, Thompson, Fogel